RUDDY, Acting P. J., WOLFE, J., and JAMES D. CLEMENS, Special Judge, concur.

ANDERSON, P. J., not participating.

James **HEIDT**, (Plaintiff) Respondent,

v.

Walter **LAULESS** and Lester J. **Crow**, d/b/a Sun Valley, (Defendants) Appellants.

No. 30574.

St. Louis Court of Appeals.

Missouri.

July 18, 1961.

H. L. C. Weier, and Dearing, Richeson & Weier, Hillsboro, for appellants.

Earl R. Blackwell, and Thurman, Nixon & Blackwell, Hillsboro, for respondent.

N. T. CAVE, Special Commissioner.

This is a suit for damages brought by plaintiff to recover for medical expenses and loss of services occasioned by injuries to his wife, Mary Heidt. Trial to a jury resulted in a judgment in favor of the plaintiff, James Heidt, and against defendants, in the amount of $2,000. This court has jurisdiction.

Defendants maintained and operated a public resort or picnic grounds in Jefferson County, Missouri. The tract consisted of about 90 acres. Some of the land was quite rough, uneven, timbered and undeveloped. But, in what is referred to as a small valley, there was a swimming pool, concession stand, picnic facilities, etc., and immediately adjacent thereto was a fishing pond which had been formed by the construction of a dirt embankment. This embankment was covered with grass. The defendants operated this resort by charging a fee for patrons who desired to avail themselves of its facilities.

The resort was leased for the one day of August 3, 1957, to Rawlings Manufacturing Company, for its exclusive use in entertaining its employees and their guests. Under the lease, defendants were to provide personnel for operating the facilities of entertainment. Mary Heidt, her husband and their daughter, attended the company picnic as guests of a Rawlings Company employee. After entering upon the premises, Mrs. Heidt, her husband and daughter, together with other visitors, went to the refreshment stand and consumed a soft drink. While there, someone reported that a fishing derby was in progress at the pond. Mrs. Heidt, her daughter, and another couple, decided to view the contest. The pond bank was about 100 feet from the concession stand and in full view. They walked directly up the bank where the grass had been mashed down by others to form what is referred to as a "grass path". The embankment was estimated to be about a 30 or 40 degree elevation, and about 15 feet long. After observing the fishing contest for a time, the Heidt daughter and the other couple walked down the embankment along the same path, and shortly Mrs. Heidt followed them. She stated,

"On the way down I slipped and fell, my feet just went from under me. * * * It was just an ordinary path, grass was mashed where the people had been going up and down. You could tell they had been using that. * * * I just walked like I normally would. * * *

"Q. Could you tell, * * * by looking at the pathway that it was slippery? A. No. * * *"

On cross examination she testified:

"Q. Did you pay any particular attention to where you were walking

there as you came down? A. I just followed them (her daughter and the other couple) on the path.

"Q. You did not observe where you were putting your feet at all? A. Naturally, when you walk down something like that you are, more or less, looking.

"Q. Did you look at that time? A. Yes, I must have. * * *

"Q. The grass was green? A. Yes."

There was evidence of a dirt path extending from the concession stand in a circular direction along a gradual slope to one end of the embankment, but Mrs. Heidt said she did not see this walkway.

Defendants first contend that the court erred in refusing their motion for a directed verdict at the close of all the evidence, because (a) plaintiff failed to prove any negligence on the part of the defendants which would entitle plaintiff to recover; and (b) the evidence disclosed that the plaintiff's wife was guilty of contributory negligence as a matter of law.

Plaintiff's verdict-directing instruction submitted to the jury his theory of negligence. The pertinent part is: that the defendants knew or should have known that the pathway was not reasonably safe, and was reasonably likely to cause patrons using such pathway to fall, "in time thereafter and by the use of ordinary care to have made said pathway reasonably safe for such use by remedying the same, or by giving timely and reasonable warning of such danger, * * *; That such danger, * * * was not known to and realized by plaintiff's wife and was not so open and glaring that it should have been known and realized by an ordinarily careful and prudent person in time to have avoided such danger; * * * That defendants failed to use such ordinary care * * * to have said pathway reasonably safe by remedying the same, or by reasonable warning, * * *" and as a result plaintiff's wife fell and was injured.

In his brief, plaintiff says, "The basic issue is whether said defendants, with full knowledge of the existence of the pathway and the unsafe condition thereof, had any duty to their patrons, * * * to warn of the existence of the dangerous condition of the pathway, (or) to direct patrons to any other pathway, or to take remedial steps to remove the danger."

It is conceded that the defendants knew that other patrons had walked up and down the face of the embankment, making this pathway, and that some had slipped thereon; but it is equally true that plaintiff's wife, by her own admission, had full knowledge of the condition of the path because she had walked up the path but a few minutes before she fell on her return trip. It is true Mrs. Heidt testified she did not realize the path was slick; but to hold that an adult who daily walks on grass does not know that there is danger of slipping and falling while ascending or descending a grassy elevation is carrying credulity beyond all human experience. See Schmoll v. National Shirt Shops of Missouri, 354 Mo. 1164, 193 S.W.2d 605, discussed later.

■ What duty did the defendants owe Mrs. Heidt? Would the fact that the defendants operated a public amusement park modify or enlarge the duty which a business establishment owes its invitees? In Hudson v. Kansas City Baseball Club, 349 Mo. 1215, 164 S.W.2d 318, loc. cit. 320, 321, 323, 142 A.L.R. 858, the Supreme Court passed on this question and said:

"The rules as developed and applied to places of public amusement and upon which the parties here rely, whether as to the condition of the premises or the activity being carried on there, are neither more nor less than the usual rules of liability applicable to the possessor of land and his business invitee."

This duty has been defined in a multitude of cases as follows:

"'A possessor of land is subject to liability for bodily harm caused to busi-

ness visitors by a natural or artificial condition thereon if, but only if, he (a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them, and (b) has no reason to believe that they will discover the condition or realize the risk involved therein, and (c) invites or permits them to enter or remain upon the land without exercising reasonable care (1) to make the condition reasonably safe, or (2) to give a warning adequate to enable them to avoid the harm.' * * * The basis of the proprietor's liability is his superior knowledge and if his invitee knows of the condition or hazard there is no duty on the part of the proprietor to warn him and there is no liability for resulting injury because the invitee has as much knowledge as the proprietor does and then by voluntarily acting, in view of his knowledge, assumes the risks and dangers incident to the known condition."

See also, State ex rel. First National Bank in St. Louis v. Hughes, 346 Mo. 938, 144 S.W.2d 84; Murray v. Ralph D'Oench Co., 347 Mo. 365, 147 S.W.2d 623; Paubel v. Hitz, 339 Mo. 274, 96 S.W.2d 369.

We think the application of the above general principles to the facts in the instant case compels the conclusion that the defendants did not violate any duty owed Mrs. Heidt. The facts and legal pronouncements in Schmoll v. National Shirt Shops of Missouri, supra, are so similar as to be controlling. In that case the plaintiff was standing in the entrance lobby of defendant's store, the floor of which was made of small chips of polished marble, interspersed with brass strips spelling out the name of the defendant company; and the floor was wet; all of which the plaintiff observed, but she said the floor did not "look slick or slippery." She took one or two steps on the surface, fell, and received injuries. After reviewing many authorities announc-

ing the general principles referred to supra, the court said, 193 S.W.2d loc. cit. 608:

"It is commonly known that a smooth, highly polished surface is slippery when wet. Under the circumstances, a person of ordinary prudence would have appreciated the slippery condition of the wet brass lettering so patently disclosed; although plaintiff did not, according to the evidence. In this connection, we are treating more directly with the legal duty or basis of liability of defendant than with a question of contributory negligence. Defendant, who was not subject to liability for injuries resulting from dangers that were obvious, should not be obliged to anticipate that its patrons, in the exercise of ordinary care, would fail to appreciate dangers generally known to be inherent in conditions that were obvious."

The court held that defendant had not violated any duty owed plaintiff.

■ So in the instant case we do not reach the question of contributory negligence. The defendant violated no duty owed Mrs. Heidt because her injuries resulted from a condition that was perfectly obvious and as well known to her as to the defendants. There was nothing inherently dangerous in the condition confronting her; she said it was just "an ordinary grass path." Grass paths are as numerous as front yards, and whether on level ground or an incline, are familiar to most persons from childhood to old age.

Plaintiff relies heavily on the case of Brown v. Reorganization Inv. Co. et al., 350 Mo. 407, 166 S.W.2d 476. This case holds that the fact that a landowner leases his premises to a lessee for one day does not relieve the lessor from liability if an invitee is injured as the result of the landlord's negligence in maintaining a dangerous condition on the premises. But the court did not discuss the rule that if an invitee has full knowledge of the condition,

then there is no duty to warn; this for the reason that the facts in the Brown case did not require a discussion of that issue. The court merely held that the facts made an issue for the jury.

Other points raised on appeal need not be discussed.

The judgment should be reversed. The Special Commissioner so recommends.

PER CURIAM.

The foregoing opinion of CAVE, Special Commissioner, is adopted as the opinion of this court. The judgment is reversed.

ANDERSON, P. J., and RUDDY, J., and ELGIN T. FULLER, Special Judge, concur.

WOLFE, J., not participating.