**Ralph ABEL, (Plaintiff) Appellant,**

**v.**

**CAMPBELL 66 EXPRESS, INC., a Corporation, (Defendant) Respondent.**

No. 31521.

St. Louis Court of Appeals.

Missouri.

April 21, 1964.

Motion to Set Aside Court's Opinion or to Grant Rehearing Denied May 18, 1964.

George E. Helfers, Roberts P. Elam, St. Louis, for appellant.

F. X. Cleary, F. Douglas.O'Leary, Moser, Marsalek, Carpenter, Cleary & Jaeckel, St. Louis, for respondent.

WOLFE, Judge.

This is an action for damages arising out of personal injuries. The plaintiff suffered the injuries when he was caused to fall by stepping into a depression in the surface of a lot maintained and used by the defendant as a truck terminal. There was a verdict and judgment for the plaintiff in the sum of $5,500. The defendant thereafter moved for a judgment in accordance with its motion for a directed verdict filed at the close of the plaintiff's case and at the close of all of the evidence. The trial court sustained the motion and entered a judgment for the defendant. The plaintiff appealed and seeks to have the judgment in his favor reinstated.

The evidence, as it relates to the matters raised by this appeal, disclosed the following:

The plaintiff was a salesman. He worked for a company that sold prefabricated steel buildings. He had heard that the Campbell 66 Express, Inc. was planning on building a new truck terminal in St. Louis, and he was interested in selling his product to it. He had previously worked with a real estate salesman named Boehm, who had obtained land for the erection of other prefabricated buildings. He telephoned the local manager of the defendant company to see if his company would be interested in buying prefabricated steel buildings. The phone conversation resulted in arranging a meeting. It was agreed that the plaintiff and Boehm, the real estate man, would meet with the manager at the defendant's office on the afternoon of September 15, 1960.

The defendant's office and place of business was located on the west side of South Thirteenth Street, in the City of St. Louis. The property there was maintained and controlled by the defendant company. It consisted of an office building numbered 805 South Thirteenth Street, and a lot immediately south of the building. The lot was used as a truck terminal. It was paved and had a wide driveway that gave entrance to Thirteenth Street. The defendant had

maintained the property in question for at least six months and had made no repairs or alterations during that period.

At about 2:00 P.M. on September 15, the plaintiff went to the defendant's place of business to keep the appointment that had been arranged with Boehm and the defendant manager. He was to meet Boehm there. He had never been to the place of business before. He went in his own car and drove south on Thirteenth Street. He drove beyond the office entrance and a short distance beyond the driveway of the terminal lot. There he parked his car on the west side of the street. He got out of his car on the driver's side and walked in the street, passing the driveway of the lot on the south end of the building, to where the sidewalk started. He walked on the sidewalk to the door of the building, when his attention was attracted by the sound of a horn blowing. He turned around and saw that there was a Campbell 66 tractor-trailer, with the trademark and name of the defendant company on the side of it, stopped on the lot near the driveway and facing east. Its motor was running, and it appeared to be about to leave the lot.

The driver, who was seated in the tractor cab, motioned for the plaintiff to come to him. The plaintiff walked back and was obliged to look up to see the driver. The driver told him that he had better move his automobile from the place where he had parked it as their trucks went in and out of the terminal at a pretty good speed and might hit the rear end of his car   The plaintiff was about seven feet back from the driveway on the lot of the defendant as this conversation took place.

After being so informed, he turned to go in front of the tractor and back to his own automobile to move it, as the truck driver had suggested. When he took his first step, he came in contact with a depression in the surface of the lot which caused him to fall and seriously injure his knee. The depression was twelve to fourteen inches in diameter and one and a half to two inches in depth. After he fell he was lying in front of the wheels of the tractor and could not get up. Being fearful that the driver had not seen him fall and might run over him, he called for help. He could not stand and was taken at once to a hospital. The day was clear and bright, but he did not see the depression as he approached the tractor, as he was looking up toward the driver.

The defendant's after-trial motion for a judgment, in accordance with its motion for a directed verdict filed during the trial, is based upon only one ground. It is contended that the plaintiff was a mere licensee, and not an invitee, of the defendant company when he went upon the lot where he fell. It is concluded from this premise that the defendant was under no duty to protect the plaintiff, and that the plaintiff took the lot as he found it. It was upon this ground that the verdict and judgment for the plaintiff were set aside and the defendant's judgment entered.

■   The function of the motion for directed verdict is the same as the demurrer formerly used, and questions the sufficiency of the plaintiff's evidence to make a case submissible to the jury. Section 510.280, RSMo 1959, V.A.M.S. This motion may be again directed to the attention of the court after verdict. Section 510.280. Girratono v. Kansas City Public Service Co., Mo.App., 243 S.W.2d 539.

■■   In passing upon such motion, we must apply the fundamental and settled rule that it admits as true every fact and circumstance which plaintiff's evidence tends to prove, and that the plaintiff is entitled to the benefit of every inference of fact which may be reasonably drawn from the evidence. We cannot sustain such a motion unless the facts in evidence, and the legitimate inferences to be drawn from such facts, are so strongly against the plaintiff as to leave no room for reasonable minds to differ. Young v. Wheelock, 333 Mo. 992, 64 S.W.2d 950; ⊗156(3) and 178 Trial, Missouri Digest.

■■ The only point preserved for review is the sufficiency of plaintiff's evidence to bring him within the classification of an invitee as he entered upon the terminal lot of the defendant. The distinction between an invitee and a licensee, and the duties the occupier of the premises owes to each, was stated by the Missouri Supreme Court in Stevenson v. Kansas City Southern Ry. Co., 348 Mo. 1216, 159 S.W.2d 260, 1. c. pp. 262–263, as follows:

"The rule in this state is that 'the owner or occupier of premises lies under no duty to protect those from injury who go upon the premises as volunteers, or merely with his express or tacit permission, from motives of curiosity or private convenience, in no way connected with business or other relations with the owner or occupier'; but that 'a bare licensee (barring wantonness, or some form of intentional wrong or active negligence by the owner or occupier) takes the premises as he finds them.' However, this is not the rule 'when the owner invites the use of his premises for purposes connected with his own benefit, pleasure, and convenience.' In that situation, our rule is 'that a licensee, who goes upon the premises of another by that other's invitation, and for that other's purposes, is no longer a bare licensee,' but 'becomes an invitee, and the duty to take ordinary care to prevent his injury is at once raised, and for the breach of that duty an action lies.' * * Thus, the real test of the status of invitee (to whom the owner has the duty to take ordinary care to prevent his injury) is the purpose of his visit."

Glaser v. Rothschild, 221 Mo. 180, 120 S.W. 1, 22 L.R.A.,N.S., 1045.

The defendant-respondent contends that although the defendant may have occupied the status of an invitee when he went to the defendant's premises to discuss the erection of prefabricated buildings, the invitation did not extend to parts of the premises other than the building. We are cited to cases which deal with and hold that an invitation to a particular part of the premises, or to the premises generally for a particular purpose, does not make the person an invitee while roaming at will to places not pertaining to the business at hand. Moss v. Nooter Corporation, Mo. App., 344 S.W.2d 647; Gayer v. J. C. Penney Company, Mo.App., 326 S.W.2d 413; Watson v. St. Joseph Coal Mining Company, 331 Mo. 475, 53 S.W.2d 895; Menteer v. Scalzo Fruit Company, 240 Mo. 177, 144 S.W. 833; Shuck v. Security Realty Co., Mo.App., 201 S.W. 559.

It is the respondent's contention that the plaintiff, in going onto the lot, came within the above rule. The defendant asserts that the plaintiff cannot rely upon the invitation of the truck driver to establish his position as an invitee because there was no showing that the truck driver was acting within the scope of his authority. It is conceded that the evidence is sufficient to establish that the truck driver was an employee of the defendant, but it is asserted that this was not sufficient to support an inference that he had authority to make a suggestion or a request of the plaintiff about the parking of plaintiff's automobile.

We are cited to Oganaso v. Mellow, 356 Mo. 228, 201 S.W.2d 365, and Montana v. Nenert, Mo.App., 226 S.W.2d 394, as support for the proposition that the defendant advances. The Oganaso case deals with an employee of the defendant who moved his own automobile on the defendant's parking lot. In doing so he struck a ladder upon which the plaintiff was working. The case of Montana v. Nenert arose out of a collision, and we held that the employee of the defendant, who was not driving defendant's car and was on a mission of his own, was not within the scope of his employment. These cases do not appear to be analogous in fact to the matter before us.

■ Here we have a truck driver who, in the course of his employment, called the

plaintiff to the truck to ask the plaintiff to move his car because of its close proximity to the driveway. He explained to the plaintiff that the car might be struck by the defendant's tractor-trailers as they moved out from the lot. The question presented is whether or not such action on the part of the driver was within the scope of his authority. It was done by the driver to prevent the plaintiff's car from being struck by his or other tractor-trailers as they left the lot. The safe driving of the tractor-trailer was the thing for which the driver was employed. Could it be said that to seek the removal of an obstruction to safe driving was beyond the scope of his employment? If it was not, then it was not beyond the scope of his authority, for he certainly had authority to do those things incidental to the work for which he was employed.

■ It is stated in Simmons v. Kroger Grocery & Baking Co., 340 Mo. 1118, 104 S.W.2d 357, l. c. 359:

"The general rule is that the maxim, 'respondeat' applies when the servant, in the line of his employment about his master's business, seeks to accomplish his master's purposes, and in doing so acts negligently, or willfully and maliciously, or even contrary to his orders or criminally, in some instances."

The reason for the rule is that "[t]he principal is responsible, not because the servant has acted in his name or under color of his employment, but because the servant was actually engaged in and about his business, and carrying out his purposes." Milazzo v. Kansas City Gas Co., Mo.Sup., 180 S.W.2d 1, l. c. 3.

In the case before us there is sufficient evidence to find that the driver called the plaintiff to the lot in the furtherance of the defendant's business, and that his act was within the scope of his authority.

■ The defendant-respondent raises in this court, for the first time, the proposition that the condition of the parking lot was open and obvious, and that the defendant was under no duty to warn the plaintiff of its condition. Rule 83.13, Rules of Civil Procedure, V.A.M.R., provides:

"(a) Preservation of Error. Apart from questions of jurisdiction of the trial court over the subject matter and questions as to the sufficiency of pleadings to state a claim upon which relief can be granted or a legal defense to a claim, no allegations of error shall be considered in any civil appeal except such as have been presented to or expressly decided by the trial court."

It is conceded that the point now raised was not presented to the trial court. We do not know what was presented to the jury, for the transcript before us does not include the instructions given. The defendant urges us to consider the point under Rule 79.04, Rules of Civil Procedure, V.A.M.R., which provides for appellate consideration of points not preserved for review when manifest injustice has occurred. It may be questionable as to whether or not we should employ the rule here, but we have examined the record and find no "manifest injustice."

We are cited to two cases relied upon by the defendant. One is Heidt v. Lauless, Mo. App., 348 S.W.2d 599, wherein the plaintiff slipped on a grassy slope while picknicking at an amusement resort. The condition of the place where the plaintiff fell was obvious and known to plaintiff. The court held that the plaintiff assumed the risk of the known condition. The second case is Bullock v. Sklar, Mo.App., 349 S.W.2d 381, 90 A.L.R.2d 318. Therein the danger was not open and obvious, and we held that the plaintiff made a submissible case. We find neither case analogous to the facts before us, as the plaintiff had never seen the lot before, and his attention was directed toward the driver who was calling him from a position higher than that of the plaintiff. The plaintiff's attention was thus diverted from his path of travel as he approached the tractor, and his first step thereafter was into the depression which caused his fall.

Essenpreis **v.** Elliott's Department Store Co., Mo.App., 37 S.W.2d 458.

Under the facts here before us, we conclude that the plaintiff made a case properly submissible to the jury, and that the court erred in entering the after-verdict judgment for the defendant.

We reverse the judgment and remand the case with directions that the judgment for the defendant be set aside and for naught held, and that the verdict and judgment for the plaintiff be reinstated.

RUDDY, P. J., and FRANK W. HAYES, Special Judge, concur.

ANDERSON, J., not participating.